Good afternoon, Your Honors. Bennett Eagle Sayre for the Appellants. And may it please the Court, Counsel. There are two scenarios for the conflicting evidence in this case, which I submit respectfully compel a decision of reversal in this situation. Did Officer Benilect, his position, did Mr. Villegas grab for the BB gun, which he thought was a shotgun? Or was it Officer Heitman's statement that he did not grab for the BB gun, but had it in his hand? Of course, he also thought it was a shotgun. And I gather, Counsel, the reason you raise that is the second gram factor is key here. Really, the first and the third were not satisfied in this case. So we're trying to determine whether this was reasonable. One officer said he grabbed for it. I forget who. Well, I've heard the action. The other one said he gradually picked it up. That's a key function, is it not, of this issue? Absolutely. And as the law commands us, we have to be weary of self-serving accounts of officers. Certainly, Officer Heitman has no bias against his fellow officer. In fact, his only bias, if there were one, would be in favor of him. So we've got to assume he's telling the truth about what he saw. What is basically uncontroverted is Mr. Davis's hands were in view. He had the tip of the gun pointed towards the sky. He held it at the top near the muzzle. He never had his fingers near the trigger. He never pointed it at the officers. And that's important because simply the presence of a deadly weapon doesn't compel or allow for the use of deadly force. The best case on point, I believe, is York versus the city of San Pablo. Mr. Thompson was ordered out of the house. He was ordered to drop his weapon. He came out of the house, but he refused to drop his weapon, and he was killed. The coroner said that he thought that his hands were in a shooting position. However, that was contradicted by several witnesses. In that situation, the court found that it was an issue of fact to be determined by the trier of fact, in addition to which the expert witness, Mr. Saunders, was also in contradiction to the coroner. And that's, of course, what we have here. We have Roger Clark, a 27-year veteran of the Sheriff's Department, who is also in contradiction to Officer Benallet. The second scenario is basically the same thing except take the facts in the manner that is most beneficial to the appellant, which is, of course, what the law commands. And in that situation, the facts are that he did not grab the weapon and that there was an absence of substantial and imminent threat of death according to the declaration of Roger Clark. Excellent. In terms of the disputed facts about whether Mr. Villegas grabbed the gun or just slowly raised it and was apparently smiling or at least conceived and all that sort of thing. Right. That's a disputed fact. That goes to whether there should be summary judgment. How are we to deal, though, with cases like York that you cited? Yeah. Or, in my case, I would look at George, at Gonzales, Lind, and Hayes, all of which involve factual circumstances that are somewhat similar to this. And the court found there was a tribal issue of fact and reversed. How are we to treat those four cases in York in our analysis? Does that go to the reasonableness of the officer's action? Yes, it does. And it goes to the conflict in the evidence as well. You know, the question of reasonableness of force used is generally for the jury. And here, respectfully, I believe that it should be for the jury. What is clearly evidence here is that it appears that Mr. Villegas was raising his hands in response to a command. One second after he began to raise his hands in response to the command, he was shot five times in quick succession and killed. And that was done by Officer Benelak. No other officer fired at him. Officer Benelak gave no warning and simply shot him in that fashion. Now, I think we have to take... Is he required to give a warning? No. He's not required to give a warning, but under the circumstances, basically the officers respectfully created the circumstances that brought about this shooting. And I talk about the Hayes case. In the Hayes case, as the Court knows, the Ninth Circuit asked the California Supreme Court to make a determination under California law as to whether pre-shooting tactics could be considered as part of the totality of circumstances in determining whether or not there was unreasonable force in the situation. California Supreme Court decided in the affirmative. So what we have here is we have a declaration by Roger Clark who says, the officers left their cover behind the concrete carport, putting themselves out literally into harm's way, which meant that when Mr. Villegas began to raise his hands with the rifle, holding onto the muzzle with one hand, they couldn't wait to see if he had any harmful intentions, but shot him immediately because they were not in cover. And it is Roger Clark, former Lieutenant Clark's opinion, that this violation of pre-shooting tactics, which is what put the officers into a situation where they basically had to shoot him because they were frightened of the situation. Counsel, the issue of coming out from behind the cupboard, doesn't that go more to the state law claims rather than the federal claims? It does. In fact, Hayes talks about the negligence standard. That's correct. But it also explains the situation in which the officers reacted, or at least one officer reacted so quickly. And that is, I mean, basically, Hayes says, the officers cannot be allowed to create, by their incorrect tactics, the conditions that led to the shooting. And that's where I believe that it does go to the issue of reasonableness. The subject, just for a second here, as an aspect of the subject. As you know, the district court found that the officers were entitled to qualified immunity. Yes. From your perspective, what is the best case law reference that would countermand that? From the state standpoint, it's the Headwaters case. And from the federal and district court standpoint, it's the Ting case, which favorably quotes Courtiel, which we both cite in our brief. And I believe what? This is the best case for the state, right? Yes, sir, the Headwaters. And if I may, it basically says that deadly force is not authorized unless the felony, which is forcible, atrocious, or threatens death or grievous bodily harm, is what's involved. And that was not the situation here. At least in a light most favorable to my client, which the law compels, respectfully, your honors to take under that circumstance. Is that with respect to reversing on summary judgment, or is that with respect to qualified immunity? Both. Both. I believe it's both. Now, I would like to reserve the rest of my time unless there are additional questions. I think I've given the meat of my argument. Otherwise, it's well laid out. Very well. Thank you. I'll not hear from you. Go. May it please the Court, Melissa Johnson, Assistant City Attorney, City of Anaheim, on behalf of all the defendants. Defendants can win on summary judgment when the officers use the force for what's objectively reasonable. I understand that in the Ninth Circuit, there's a de facto rule that summary judgment in deadly force cases are subject to plaintiff's scrutiny by the court. That's the Gonzales case. That's my case. I argued it on bond. And I brought it up during oral argument in front of the district court. Gonzales really piggybacked off of Judge Kaczynski's Scott v. Penner case, where Judge Kaczynski said that in deadly force cases, where you have a motion for summary judgment based on the testimony of the surviving police officers, the court can't accept their testimony at face value. I understand all that. But the situation that we really have here, it's not so much a question of conflicting facts, but rather the legal significance of facts. Well, wait a minute. How can you look at the two different versions of what happened with the two officers? In one case, the officer says that Villegas grabbed for the gun, a Ferdinand moment. Clearly, the case law suggests that if that happens, then the officers are in a much better position. The other officer said that he didn't obey the command, but he reached down, picked up the gun, assumed to be whether it was eight inches or a foot, never got near the trigger, kept it like this, and apparently was looking at them. He didn't seem to be panicked, didn't seem to be anything. That's a material issue of fact. This is not. Your Honor, those aren't the facts. What you have to remember is that one officer saw him grab it, and the other said that he didn't grab it. What the court has to understand is the officers had different points of view. Pying out from this corner, Officer Benelak ends up in the lead, furthest out. The decedent is standing over here behind a raised concrete stepped metal frame. Officer Benelak has the best view. He may have the best view, but I'm looking here at what was said. This is on page 143 of the record, 19. Benelak and I were all still side-stepping to the north as Villegas continued toward our direction. I observed Villegas start to slightly raise the rifle up from the ground. Villegas' facial expression was not panicked, but calm. The butt of the stock was on the ground or close to it, and as he moved his arms, the rifle was moving with him in an awkward manner. I observed Villegas' movements between the staircase doorsteps and this light blue or turquoise painted metal railing rungs. So even though he was in a different spot, the fact is he saw this young man. He saw him well enough that he could see his eyes, he could see his facial expression. So isn't that something that a jury ought to resolve, particularly when under our case law? It may make all the difference in the world whether this was a reasonable action. I understand the court's concern, and these steps were roughly about a foot apart, so it wasn't like you couldn't see through them. Partially blocked, but not totally blocked. But again, Officer Heitman didn't see that initial action that Officer Menilek saw, where the decedent grabbed the gun first. He saw, after he grabbed it, him start to raise it up. And how are you drawing that distinction? He didn't say that. He didn't say he didn't see him reach back and grab it either. He only put in his declaration what he actually saw, which was later in the event. Two different versions of the same thing. And my point is simply that this is critical in whether this is reasonable under our case law. And yet, this is decided by summary judgment. How can that work? Your Honor, I understand the court's concern. But you've got to remember that the officers are being seen different points in time. Plaintiffs trying to play them off each other, that they were both looking at exactly the same thing. And one officer sees one thing, and another officer sees another. I would concede, if that's true, we may have a trial issue of fact. But that's not what happened here. As the officers pointed out, again, Officer Menilek had the best view. His view wasn't even blocked by the staircase. He was the only officer with a clear shot, which is why he's the only one that took a shot. Perhaps so. But the reality is you've got two different versions of the same event, the exactness of which is the key function of the second gram factor, is it not? There has to be an immediate threat. I concede that, Your Honor. That's the most important factor. And the fact that if Villegas reached for the gun, he grasped the gun like he was going to move. That's one thing. On the other hand, if he's slowly moving it up, as the other officer testified, and he could see the space, the space seemed to be calm and so on. That's quite another. But, Your Honor, him grabbing the gun isn't even necessary. The fact that they tell him to put his hands up, which he doesn't do. I agree. They tell him to drop the gun, which he doesn't do, and common sense told him to do. These are uniformed officers with guns pointing at them. The fact that he picks what they believe is a shotgun a foot off the ground. He's picking it up with his left hand. All he has to do is this, and he can shoot. They have no time to wait. He didn't do that, and the officer that killed him, according to his testimony, acted in one second. Do you know how fast that is? I mean, it could very well be that when they told him to show us your hands, that that's what he was doing. That's what you have in some of these cases here. I mean, that's what I'm saying is I know your position is different, but why couldn't a jury interpret what he was doing as he was going to show them his hand? I mean, he should have dropped the gun. I agree with that. But why does the judge decide this based on summary judgment? Your Honor, to me it defies common sense. If an officer is asking you to show clear hands and drop the gun, instead you just don't drop it. You don't continue to pick it up. And they didn't have time to wait. Once he gets it level, they don't have to wait until they see the barrel of the gun to shoot. Where's the testimony about how long it would have taken to lever the gun, move his hand from the barrel to bring up the butt? Going back to your Gonzales case, we have said in general we have recognized that an officer must give a warning before using deadly force whenever practicable. Now why wasn't it practicable for him to, say, drop the gun? Because there was no time, Your Honor. I'll admit there's no testimony in the record as to how long does it take to fire a shotgun. But I think the officer understood. He's already moving. He's already got a foot off the ground. It doesn't take very long to do this. If you give a warning, that implies you have to give the person time to comply. Perception reaction time is a second and a half. The officers didn't have a second and a half to wait because once he leveled in, they believe this is a shotgun. He gets one shot off. He's going to kill all four of them. They don't have to wait to see the barrel. There's cases I'm going to say that. This isn't like he's just reaching in the waistband and they don't even see a gun at all. They see what they appear to be a shotgun, and he is not dropping it. He's continuing to pick it up. They can't wait for him to get the advantage. Can I just get a clarification on that? It's not clear whether he had one hand on the barrel or both hands. Is that clear in the record? It's clear in the record in my mind that he only had one hand, the left hand. I don't believe plaintiff disputes that. I don't. And was he a left-handed shooter or a right-handed shooter? I don't believe that's in the record, and I don't recall, Your Honor. Your assumption is that the record is clear enough that he could have leveled that gun in a split second, enough time, due to a shortness of time, and made it not practicable to give him a warning. Sure, and you don't have to give a warning unless it's feasible. That's what I said, whenever practicable. But again, part of giving a warning is you have to give the person time to comply. There was no time to wait for that. And plus, even though they didn't say stop or I'll shoot, they did say drop the gun, drop the gun. I think, you know, maybe that's not drop it or I'll shoot, but that implies you better do what you're told. We're pointing guns at you. I think it's implied that something bad will happen if you don't comply, which is what happened here. How do you reconcile the George case or the Hayes case with this particular matter? As far as Hayes for both the federal and the state, sure, the California Supreme Court held in Hayes that the officer's pre-shooting conduct can be looked at for a negligence claim, a state claim. However, it also said you have to look at this in the totality of the circumstances. The police were responding to a call of a suspected drug dealer with a shotgun in the parking lot. Okay, well, I'll alter it. But insofar as the state claims are concerned, state law, of course, doesn't provide qualified immunity in a setting where the actions are unreasonable, right? Of course. So is it not correct that based upon the concept of going beyond the wall or the one officer's version of what happened with the gun that at least the state claims should go to a jury so that the jury can determine whether this was reasonable? Your Honor, I respectfully disagree. Mr. Clark always opines that the officers should hide behind cover, and God forbid they do their job and catch the bad guys. Sometimes to catch the bad guys, you have to go out in the open to get them. This, again, you have to remember. Even under Hayes, under the state claim, it's the totality of the circumstances. How did this start off? It started off with the citizen calling 911 that they saw a person who they believed to be a drug dealer with a shotgun in this parking lot. The police responded to stop him from harming anybody. So they had a right and a duty to come around that corner and confront him. They don't have to hide behind the corner and say, oh, please, will you put the shotgun down? No, I agree. But the reality is this is a factual dispute about what was reasonable, right? You look at the totality of the circumstances, you get that. But is this not something that the jury ought to determine whether, given the circumstances, given it's nighttime, you have these young men turned out with a BB gun. You know, it's not a good thing to shoot people unless you have to. And the concern I have here is that this has been taken away from the jury, and there are enough conflicting facts that go to the heart of whether this is reasonable, particularly with respect to the state plan, which is almost a negligence issue and an unlawful death plan. Your Honor, there's no conflict on the cover of the sheet. There's only Mr. Clark saying that he believes that they shouldn't have done that. Well, if you're going to take the facts, take the facts of the two officers. That alone goes to the heart, does it not, of whether this was reasonable. If it was reasonable, then the officer could win. If it was unreasonable, then they're unprotected under state law, right? There could be potential negligence. But again, I disagree that the facts are disputed because I believe the officers had different points of view. I would be shocked if you didn't disagree, did you? And, Your Honor, on the expert, the Ninth Circuit has held in both Reynolds and other cases that you can't just put up an expert report or an expert declaration where someone like Mr. Clark, who always said what the officers did was unreasonable, can create a problem. Well, let's say we put Mr. Clark aside. I, frankly, personally, look at what the officers testified to in their depositions and what's attached to the declaration. That issue, how this young man dealt with the gun, whether it was burgeoning or whether it was slow, is an important, critical issue in whether what happened was reasonable. And if that's right, then it has nothing to do with it. Clark adds to the negligence aspect, I suppose. But he's not even essential to that. If you throw him out, there's still the issue regarding the gun. But, again, Your Honor, I think you're putting too much importance. The fact that's undisputed is that he raised the gun at least a foot. This is something that happened very fast, in less than probably one or two seconds. Show us your hands, show us your hands, drop the gun, drop the gun, boom, boom, boom. It happened all like that. This was a split-second decision. Under Graham and all the federal cases, you're supposed to look at this from the perspective of the officer. And that's where these cases come in, like George, a man on a walker. A man on a walker who's had chemotherapy, he's had a pistol down there, he's pointing down, and they shoot him. And it was sent back to the jury. So the question is, is this more like George or is it more like something else? I think it's controlled by Hays. Assuming the court will agree with me that the facts are undisputed, the Supreme Court said then, it's a question of law for the court as to objective reason in this. One question for you, is this officer shooting history in the district court record? I don't believe so. I do believe there's some references in the depot. And, Your Honor, I believe you're sitting on that panel regarding that other case. Very well, thank you very much, counsel. We'll have a rebuttal. The most important factor in Graham is the immediate threat of safety to the officers. Defendants cannot be allowed to create the condition by their unreasonable tactics that lead to the death. And that's what I said a little bit ago. I think the court has it right, or at least appears to have it right, that these are issues of fact that need to be decided by the trier of fact. And the court is commanded by the law, as I am, to basically take the facts most favorable to my client. And then, based upon that, respectfully, that compels that it be reversed and returned to the jury. And I stand ready for it. You would have us question the tactics, or you would have the jury? I would have the jury question the tactics. We have a declaration. And decide what the proper deployment would have been in this fraud situation? Yes, I believe that is the correct thing to do, is that the jury should make the decision. If we had disagreed with you on that, then is that your case? No, not by itself. Not at all. There's still material conflict in the evidence between the officers' positions. There is no evidence that anybody ever complained that this fellow that had a shotgun that was alleged drug dealer, that he ever threatened anybody. That may be, but they're confronting an immediate situation. Sure, you don't know his history at that point. No, I understand that, but they also... You don't know who he is, presumably. But two officers... I'm sorry, go ahead. I get one question now, and I don't know if it's in Niagara or Iowa. Sorry. The council for the county is saying, or the city is saying, conflict because of two different perspectives. You know, what you see looking straight on is different from what the person with the different angle might see. So what's your response to that? Well, even that is an issue of fact for the jury. I mean, the officers were in a diamond formation. They were immediately next to each other. The jury would have to decide whether they believe that Officer Heitman's statements, his testimony, is accurate, whether he was somehow out of position, even though he was shoulder-to-shoulder with Benelak. And they have the right and the obligation to make those kinds of determinations. Any other questions? Thank you. Thank you very much, both of both councils. We appreciate it very much. As all of you who are here observing can see, these are both very able lawyers, and they're arguing their cases vigorously. It helps the court to focus on what cases and what facts are important, and hopefully you can see that we've also prepared to be ready to answer and ask questions. Thank you. You're welcome. Thank you very much. The case just argued is submitted, and we will now hear argument in the final argument of the day, which is Barcadillo v. Cardenbroek, Unified School District.
judges: Fisher, M. Smith, Owens